Good morning, everyone, and welcome to the Ninth Circuit. Judge Wallace and I are pleased to welcome Judge Malloy, who is a district judge from the District of Montana and is here to help us. Thank you. We have a number of cases submitted on the briefs. Those are United States v. Kenneth Westcott, Scott Datilo v. Nancy Berryhill, RLI Insurance Company v. City of Visalia, Brandy Williams v. G&K Services, Inc., and Master Tax LLC v. Ultimate Software Group. We have one case for oral argument today. That's the case of June Newirth v. Aegis Senior Communities, LLC. Counsel? Good morning. May it please the Court. Lon McIntyre appearing on behalf of the appellant and defendant, Aegis Senior Communities, in this case. With the Court's permission, I'd like to reserve two minutes for rebuttal. Please watch the clock. Thank you. In this case involving the district court's ruling that there was a waiver of the right to compel arbitration, I wanted to discuss with the Court how far the district court's decision strays from the overriding policies and analytical framework for determining whether there has been a waiver of the right to arbitration. When you do that, you'll, of course, take a look at Martin, which we are bound by, and which you may find difficult, difficulty telling us why it doesn't apply. Yes, Your Honor. Absolutely. In Martin, the facts are remarkably distinguishable in terms of the fact that in Martin the party petitioning to compel arbitration or seeking arbitration did not file a petition to compel arbitration at the outset of the case. But yours was withdrawn. It was withdrawn in order to be knowledgeable that you had the right to arbitrate. You withdrew it, and then when you had another opportunity to move for arbitration, you didn't take it. Well, in withdrawing the motion to accommodate the filing of the second amended complaint, we expressly reserved the right to file a motion to dismiss and a motion to compel arbitration. We did file that motion to compel arbitration. How much later did you file it? It was, I believe, about a year. Well, actually, that's correct, about 11 months. But part of the delay was while the motion to dismiss was under consideration by the district court. But you're trying to dismiss a case that Judge Reinhart wrote very clearly on, and that case, there was a year delay. And he found that that was the panel there found that it was too much. How is your case different? Well, delay is not the only determinative factor. Well, how is your difference in that point that at least our court then relied on? Well, it's different because we, at the outset, did indicate our intention to move for arbitration when at the outset that right was available. We, in fact, filed a motion to compel arbitration. The delay occurred when the plaintiffs chose to file a second amended complaint, bring in a new plaintiff with some question whether or not that plaintiff even had signed an arbitration agreement. I didn't understand that part of your argument. Obviously, you had a copy of the contract because you produced it in discovery and the contract showed that there was an arbitration agreement. So how was there any misunderstanding about whether she had an arbitration agreement? Well, there were two contracts, one that was initialed and one that was not. And the question is which one applied to the particular allegations of this complaint. And there was some confusion at the beginning on defendant's part about whether or not the arbitration agreement that was not initialed and that was not agreed to, that contract from 2013, in fact, was the operative agreement. So the, that is part of this delay process in evaluating when and to make, when a motion to compel the arbitration was both appropriate and viable. In addition... Why didn't you immediately file the motion to compel arbitration once the amended complaint was filed? Because of the addition of a new plaintiff, Barbara Feinberg, and that particular plaintiff, there was, there was some question about whether or not she had agreed to arbitration. One agreement she had not initialed the arbitration provision and another agreement she had not. I know, but that's Judge Akuta's point, isn't it? That that's your problem. I mean, you, you have the contract. It's your problem if you don't read it or get it clarified. You still could have asked for arbitration immediately, couldn't you? Well, I think that there's, there's some credit needs to be given to the fact that counsel is attempting to, to do what was both viable and appropriate in this case. We've said, and I think Van asked, that you, you are able to pursue arbitration of certain of the claims even if other claims can't be pursued through arbitration. And here, at least two of the parties you knew for sure had arbitration clauses. I, I guess I'm skeptical why you didn't know that the third one had an arbitration clause since you had the contract. So, one of which was initialed, and I guess you could infer that the initialed one was the, was the operable one. But in any event, you could have moved for arbitration on the other two claims. Why, why shouldn't we, why shouldn't you be held to that obligation, which you delayed until you actually filed a motion for a ruling on the merits? Well, the the question is whether or not class arbitration was available. And with the plaintiff, the newly added plaintiff, Barbara Feinberg, that put that issue into dispute. And the- Why is that? Because it wasn't clear whether she had agreed to class arbitration or whether she had agreed to individual arbitration. And there was, there was a potential of inconsistent rulings with respect to these plaintiffs because of the different agreements that they had and the different- So you strategically decided not to pursue arbitration, is what you're saying? No, because we had made it clear from the outset that we intended to pursue arbitration. But there was a period of time when we didn't move forward with that effort while this was being clarified. We did immediately file a motion to compel arbitration, which is significantly different from the facts in Martin, where no effort was made other than some statements and other pleadings. Was it immediately or was it six months later after Feinberg? It was a number of months later, wasn't it, after Feinberg withdrew that you actually filed a motion to compel? Yes, Your Honor. And I was referencing the fact that we moved to compel arbitration when the case was first removed to Federal court within a week. And we made our intent to pursue that or our desire to pursue that forum clear at that point in time. Until you withdrew it. We withdrew it with the reservation of the right to reassert the right to file the motion to compel arbitration, which was stipulated to with the plaintiff's attorneys and was part of that, of the record. And that was made well known that we did intend to do that. The issue with respect to our participation in some litigation activities, which can indicate an inconsistency with the intent to pursue arbitration. I wanted to point out that that participation was mandated by the court rules, which were invoked by the plaintiff filing the complaint in violation of their agreement to arbitrate this matter. Is there a local rule that allows you to ask the judge to relieve you of those obligations? I don't know the answer to that, Your Honor. But we do know that the typical procedures that are initiated when a complaint is filed in Federal court, the Rule 26 meetings and disclosures and- But the motion to dismiss is not required. That was just done on your own initiative. That's- And asking the court for a ruling on the merits. That's true, Your Honor. And I would point to a number of cases that have talked about, and they're in our briefs, about a motion to dismiss is not itself dispositive of the question whether we made a conscious decision. Those cases were all on procedural grounds, though, like race judicata or statute of limitations. They weren't merits-based, at least as I read them. Is there one that was merits-based? I believe the Sweaterby case involved a motion to dismiss that was merits-based. I'll have to confirm that, Your Honor. And I'd be happy to do that in my rebuttal. I'm into my rebuttal time, if I may. Yes, of course. Unless you have any other questions for now. That's fine. Thank you. Good morning, Your Honors. May it please the court, Sarah Colby for appellees, plaintiffs, June Neuwirth, Margaret Pierce, and the proposed class. As the court has noted, only two of the three factors necessary for finding a waiver are contested here. And this court is bound by the court's decision- Can you speak into the microphone? Sorry. We're having trouble hearing from you. Thank you. Sorry. Is bound by this court's decision in Martin v. Yesuda. Martin can't overrule our prior cases, right? It was just a panel decision. That's correct. It has to be read in conjunction with the prior case. So our cases say that where a party in violation of its contract, which is what your client did, brings litigation, the costs of that litigation are not deemed to be prejudice. Well, the prejudice that we speak of all and that the district court relied on has to do with actions that occurred after the motion to dismiss the second amended complaint was filed and flowed from that. Martin v. Yesuda distinguishes those other cases, specifically Fisher, by saying that the self-inflicted wounds are the kinds of litigation expenses like preparing and filing a complaint, service of the complaint, and everything and nothing that the district court relied on in finding prejudice or that we're speaking about is something that happened before the motion to dismiss. And you're ahead of prejudice, which is a necessary requirement solely on the motion to dismiss. Is that right, responding to the motion to dismiss? No, Your Honor. Actually, there's more than just the motion to dismiss on the merits. The plaintiffs during, basically, Aegis was silent on the issue of arbitration between the stipulation on the second amended complaint and until after it lost the motion to dismiss. And during that time, plaintiffs relied on Aegis' strategic choice to abandon its motion to compel arbitration and- You shouldn't have been there in the first place, right? You were breaching your contract, your contractual agreement to arbitrate. And so everything that was done, according to our case law, Lake Communications and Fisher, everything that was done to further the litigation was not prejudicial, was a self-inflicted wound. Respectfully, I disagree. I think that Lake and Fisher were distinguished by Martin v. Yesuda. But Martin can't overrule them. They remain good law, and its distinction is limited to the facts of Martin. Yes, in Martin, also, the parties had signed an arbitration agreement, and the plaintiffs had filed in federal court. And this court and the US Supreme Court has held that arbitration agreements, if they're valid and enforceable, are to be enforced, save for grounds for not enforcing a contract. And waiver is one of those grounds. And the court has held that these three factors must be considered in waiver. If the defendants had filed, initially, a motion to compel arbitration as soon as the second amended complaint was filed, regardless of what the district court had done, we would have been in one forum or the other, and we would have been that much farther along. And we would not, had arbitration been compelled, expended that time and those resources. Well, if you had just complied with the contract, you wouldn't have expended those expenses in litigation either, correct? Well, that is correct. However, as Martin says, as Martin holds, and as Van Ness Townhouses holds, and as Kelly holds, you can basically waive your right to compel arbitration by agreeing to take advantage of being in federal court, which is what the defendants did here. Well, that's when they filed the motion to dismiss, because otherwise they were just responding to plaintiff's litigation. They were, well, they filed a motion to dismiss because they were hoping that they could get a dismissal on the merits. And they were taking advantage of being in federal court, which, over the next 10 to 11 months, wasted the court's resources, plaintiff's resources, and then when they didn't win, and they didn't get the advantage of being in federal court, they tried to move to arbitration in hopes of a more favorable audience, which in the last paragraph of Martin, the court finds that that is an abuse of the system, both the judicial and the arbitration system, and that it's a waste of the court's resources and the plaintiff's resources, and to allow it would be manifestly unfair to the plaintiffs. And so if defendants took advantage of being in federal court, and all of that flowed from their decision, their strategic choice to do that, they can't, after getting an unfavorable opinion, change course. So I would like to talk just a little bit about the things that happened, the prejudice that happened between the time that they filed the motion to dismiss the Second Amendment complaint and lost. There are a number of federal court procedures that the parties had to engage in, and during those procedures, never once to the plaintiff or to the court did defendants raise the issue of arbitration. Well, what specifically was the prejudice from responding to the motion to dismiss? It was the cost of responding to the motion to dismiss. And so what, they prepared an answer, or what did they do? What was the cost of responding to the motion to dismiss? The cost of responding to the motion to dismiss was filing the opposition papers, researching the opposition. And then, additionally, the parties had a Rule 26-F conference and filed a Rule 26-F report. That was just part of the plaintiff's litigation, though, right? That wasn't part of the motion to dismiss. No, but that occurred after the motion to dismiss. Had a motion to compel arbitration been filed immediately, we may never have gotten there. And there's nothing that could have, to stop the court from saying if they had a motion to compel arbitration, I'm not, I'm going to stay the rest of this until I decide, because I don't want to waste the party's or the court's resources until this is determined which forum it should be in. Additionally, the, during that lengthy time, that lengthy period of silence, and during which the court found that Aegis was completely silent on arbitration, and that's a factual finding that's subject to clear error review, and it's amply supported by the record. In fact, Aegis is unable to point to a single instance when it mentioned arbitration during that period. Even in situations where you would have expected it to mention it, say in the Rule 26F report, when it's discussing anticipated motions or the discovery schedule. Just never said, I don't intend, you don't intend to arbitrate. So they never actually expressly waived the right to arbitrate. In fact, they retained that right, correct? They waived the right, they expressed their intent through their conduct, which was to, despite being given the opportunity. You're asking us to infer that, right? Pardon? You're asking us to infer that, because they never expressly stated that they were waiving that right. Yes. I would ask you to, based on their conduct, their withdrawal of the motion to compel arbitration, and decision not to resubmit it in response to the second amended complaint, and then their complete silence until they lost the motion to dismiss on the merits. Martin v. Ysouda says that spending a lengthy time in federal court is, with its rigorous procedural and substantive rules, will almost inevitably cause the parties to expend more time and money than if they had proceeded directly to arbitration. And again, if AGIS had made that motion to compel arbitration immediately in response to the second amended complaint, we would have been in one court or the other. But if we'd gone to arbitration, we would not have undertaken all of the expense during that period of delay. Which plaintiff could have done just by complying with the contract, as I understand it? Well, plaintiffs also have arguments that the contract is, that there was no agreement, there was no meeting of the minds, as to Margaret Pierce, because there were two different contracts that were signed, and also has unconscionability arguments. So we are not conceding that arbitration should occur in this case, but... I've taken you over your time. Yes, thank you very much, Your Honors. Appellee Smith. A couple of points that I'd like to make quickly here. One really important distinction about Martin that I did not mention yet, but that is really critical, is the facts in Martin indicated that during the course of the federal litigation, the judge, in fact, warned the defense counsel that he stood at, he was at risk of waiving his right to arbitration, and asked, do you intend to assert the right to arbitration? Counsel said, well, I'm not sure. I'm kind of liking it here in federal court, how things are going, and I'm not sure whether I'm going to assert that right or not. Significantly different from the facts in our case, where there's no such evidence that that was ever our intent, to consciously relinquish the right to arbitration. Do you seriously believe that we could write an opinion distinguishing Martin based upon that? That is one of the really significant factors that I think shows, that goes to this really critical question of whether there was inconsistent conduct by the defendants in this case. We, in contrast, asserted the right to arbitration at the outset, and then reasserted it later, and only engaged in the conduct. A year later, as in Martin. No, well, Martin was actually 17 months, a period of delay, but also part of the delay here was from the pending ruling that took a long time for the court to rule on. We think both. I also want to point out that Sweaterby did involve a motion to dismiss on the merits, and the court found no waiver in that case, and that there is no prejudice in this case, other than what the plaintiffs inflicted by entering into this forum without honoring their agreement to arbitrate, and that the ruling on the motion to dismiss, and the time spent on the motion to dismiss, was not something that was a waste of time, would not be re-litigated in arbitration, and did not result in prejudice to the plaintiffs. Thank you very much for your time, Your Honors. We thank both sides for their argument, and the case of Juneau Earth v. A.J.S. Senior Communities is submitted, and we're adjourned for this morning's session.
judges: Wallace, Ikuta, Molloy